IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOE BALTAS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20cv00276 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD W. CLARKE, *et al.*, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

This matter is before the court on Baltas's motions seeking preliminary injunctive relief (ECF Nos. 5, 47, and 97) in this civil action filed under 42 U.S.C. § 1983.[1] Having reviewed the motions, the court concludes that there is no basis for granting the requested relief and, therefore, will deny the motion.

### I.

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a "clear showing" that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). The party seeking relief must show that the irreparable harm he faces

---

[1] Baltas also filed motions to expedite a hearing and/or ruling on his motions. (*See* ECF Nos. 18, 24, 29, and 96.)

in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 812. Without a showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991). "The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Va. Chapter, Associated Gen. Contractors, Inc. v. Kreps*, 444 F. Supp. 1167, 1182 (W.D. Va. 1978) (quoting *Va. Petroleum Jobbers Ass'n. v. Fed. Power Comm'n*, 259 F.2d 921 (D.C. Cir. 1958)). Further, while a preliminary injunction may be appropriate to grant intermediate relief of the same character as that which may be granted finally, "preliminary relief may never be granted that addresses matters which in no circumstances can be dealt with in any final injunction that may be entered." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d at 525 (internal citations omitted).

## II.

Baltas is a Connecticut inmate housed in the Virginia Department of Corrections ("VDOC") at Red Onion State Prison ("Red Onion") under an Interstate Corrections Compact between Connecticut and Virginia. Baltas was transferred to Virginia on December 20, 2019. On April 15, 2020, Baltas filed his original complaint and an "emergency motion for a temporary restraining order and preliminary injunction" (ECF No. 5) in the United States District Court for the Eastern District of Virginia. In his motion, Baltas asked the court to cease: confining him in Virginia, confining him in isolation, imposing the VDOC Operating Procedures ("OP") on him, withholding his personal property, and keeping the lights on in his cell for 24-hours a day. On May 12, 2020, the Eastern District of Virginia transferred the

action to this court. (*See* ECF No. 12). On the same day, this court conditionally filed the action and directed Baltas to provide the court with certain financial documentation before he could proceed. (*See* ECF No. 14.) Baltas complied with the court's conditional filing orders on June 19, 2020, and by order entered July 17, 2020, the court directed service of this action. (*See* ECF Nos. 25 and 27.) On July 21, 2020, the court directed defendant Warden Kiser to respond to Baltas's motion seeking preliminary injunctive relief. (*See* ECF No. 27.) Before Warden Kiser filed a response to the motion, on August 7, 2020, Baltas asked for an extension of time to file an amended complaint (*see* ECF No. 32), and Warden Kiser consequently asked for an extension of time to respond to the motion seeking preliminary injunctive relief (*see* ECF No. 33). The court granted both motions. (*See* ECF No. 34.) Baltas filed an amended complaint on August 24, 2020, and, among other relief, asked the court to issue preliminary injunctive relief and a temporary restraining order. (*See* ECF No. 46.) His request for relief did not specifically identify what preliminary relief he sought. (*Id.*) In addition to docketing his amended complaint, the court docketed the same document as a motion seeking preliminary injunctive relief. (*See* ECF No. 47.) Warden Kiser responded, with affidavits, to the motions seeking preliminary injunctive relief on September 3, 2020 (*see* ECF No. 50) and two other defendants responded to the motions on September 4, 2020 (*see* ECF No. 51). The defendants moved to dismiss the action. (*See* ECF Nos. 54, 72, and 76.) On February 12, 2021, Baltas filed a "motion for equitable relief," asking the court to order the defendants to "treat [him] equally with the general population" of Red Onion by providing him with the same access to telephone calls, showers, and commissary. (*See* ECF No. 97.) By memorandum opinion and order entered March 18, 2021, the court granted defendants' motions to dismiss many, but not all, of the 24

claims identified by Baltas in his amended complaint.² (*See* ECF Nos. 105 and 106.) The court also identified claims that the parties had not. (*See id.*) Based on the court's memorandum opinion and order adjudicating defendants' motions to dismiss, the claims which currently remain pending in this action are:

(A) a retaliation claim against Connecticut Department of Corrections ("CDOC") Commissioner Cook concerning Baltas's transfer to Virginia from Connecticut in December 2019;

(B) a living conditions claim against defendants Officer Allen, Officer Clem, Sgt. Little, Sgt. Meade, and Officer A. Mullins concerning the 16 days Baltas spent in a mental health unit;

(C) a sexual threat claim against Officer Milgrim;

(D) an Eighth Amendment claim against Sgt. Meade concerning Sgt. Meade allegedly providing a weapon and soliciting an inmate to attack Baltas in January 2020;

(E) an Eighth Amendment claim against Capt. Franklin, concerning Capt. Franklin's alleged admission that he had been involved in setting up the attack on Baltas in January 2020;

(F) a failure-to-protect claim against defendants VDOC Director Clarke, Assistant Warden ("AW") Fuller, and Unit Manager ("UM") Miller concerning an incident where other inmates attacked Baltas in January 2020;

(G) an Eighth Amendment claim against AW Fuller concerning AW Fuller's alleged refusal to loosen restraints on Baltas while he was at the hospital being treated for injuries following the attack in January 2020; and

(H) a medical treatment claim against defendant AW Fuller concerning Baltas's treatment at the hospital following the January 2020 attack.

With regard to the remaining claims in this action, the court finds that Baltas has not made a clear showing that he is likely to suffer actual and imminent irreparable harm in the

---

² Baltas identified 26 claims, but "Claims" 19 and 26 were actually legal arguments.

absence of preliminary injunctive relief and/or that he is likely to succeed on the merits of the claims.³ To the extent Baltas asserts that he is currently in physical danger at Red Onion, his assertions are unsupported and speculative.⁴ Accordingly, the court will deny Baltas's motions seeking preliminary injunctive relief.

### III.

With regard to his retaliatory transfer claim, Baltas alleges that defendant CDOC Commissioner Cook transferred him from Connecticut to Virginia "in retaliation for his civil actions and to interfere with his" ongoing litigation in Connecticut. Baltas claims that both CDOC and VDOC officials told him that he was transferred to Virginia "as a result of his litigation against [the CDOC] and to hinder said litigation." Defendants submit that Baltas was transferred to Virginia because Connecticut Department of Corrections ("CDOC") officials determined that Baltas posed a risk to prison operations in Connecticut, as well as to ensure the safety of staff and inmates in there.

Baltas has a violent criminal and institutional history. He is serving a sentence for murder, two counts of assault, two counts of burglary, and one count of kidnapping. In 2014, he was given an additional sentence for stabbing and cutting another inmate. While in

---

³ With regard to any other claim raised in his motions seeking preliminary injunctive relief, the allegations either do not sufficiently relate to the claims in his amended complaint and/or Baltas has not "clearly shown" that he is likely to succeed on the merits of those claims inasmuch as they were dismissed by memorandum opinion and order entered March 18, 2020. (*See* ECF Nos. 105 and 106.)

⁴ The court notes that Baltas is currently housed in the restrictive housing unit ("RHU") and classified as a SD-2 status, the least restrictive status within the RHU. He is housed in the RHU for his own safety, as well as the safety of other offenders. Although he is permitted out of his cell for approximately four hours each day, he does not have any physical contact with other inmates. When he goes outside for recreation, he is placed in an "individual module" and, when he stays inside for recreation, it is done at "secure tables" which allow inmates to socialize by seeing and speaking to each other, but prohibits them from being able to physically touch each other.

Connecticut, Baltas also received multiple disciplinary infractions for assaulting and threatening correctional officers and staff, fighting, possessing contraband, and interfering with safety or security. CDOC officials often housed Baltas in restrictive housing units due to his disciplinary issues and, prior to his transfer to Virginia, Baltas was classified as a Level 5 inmate—the highest level—based on his disciplinary history. Baltas has not clearly shown that he is likely to suffer actual an imminent irreparable harm in the absence of preliminary injunctive relief and he has not clearly shown that he is likely to succeed on the merits of his retaliatory transfer claim.

## IV.

In his living conditions claims, Baltas complains about the conditions of his confinement in a mental health cell for 16 days in December 2019 and January 2020. With regard to the remaining defendants in these claims, Baltas alleges that Officers Allen and Clem and Sgts. Little and Meade denied him recreation for approximately nine days, made him wait more than 72 hours between showers on ten days, denied him cleaning supplies, denied him access to the telephone on all but one occasion, denied him access to the grievance process, forced him to live with waste in his cell daily, and denied him running water in his cell daily.

Baltas is not currently housed in a mental health cell and he has not provided any evidence that he is likely to be placed in one in the near future. Accordingly, the court cannot find that Baltas has clearly shown that he is likely to suffer actual and imminent irreparable harm in the absence of preliminary injunctive relief as to these claims.[5]

---

[5] Moreover, Baltas has not clearly shown that he is likely to succeed on the merits of these claims. The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[T]he Constitution does not mandate comfortable prisons," however, and conditions that are

## V.

With regard to his claim about sexual threats, Baltas alleges that on March 2, 2020, during a cell search, Officer Milgrim threatened to "break his ass" and, on March 21, 2020, Officer Milgrim said that he "intended to rape his shit hole." Baltas does not describe the circumstances surrounding the March 21 statement. He also does not allege that Officer Milgrim physically touched him while making the statements or that he subsequently engaged in conduct that would make Baltas believe that he would actually sexually abuse him based on the statements. Finally, Baltas does not allege that Officer Milgrim has since made sexual threats or sexually abused him in the year since.. Accordingly, the court cannot find that Baltas has clearly shown that he is likely to suffer actual and imminent irreparable harm in the absence of preliminary injunctive relief as to this claim.

---

"restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347-49. It is well established that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). To sustain a living conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged official acts caused the denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish the first element, the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). To establish the second element of deliberate indifference, a plaintiff must show that the defendant was personally aware of facts indicating a substantial risk of serious harm and that the defendant must have actually recognized the existence of such a risk. *See, e.g., Farmer*, 511 U.S. at 838–40; *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994). The plaintiff also must show that the defendant subjectively recognized that his actions were inappropriate in light of that risk. *Parrish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (citation omitted).

Baltas fails to allege any "significant physical or emotional harm, or a grave risk of such harm," resulting from the denial of recreation for nine days, having to wait 72 hours between showers, being denied cleaning supplies, only being allowed access to a telephone once during the 16 days, and having to live with waste and no running water in his cell during that time. Moreover, he has not alleged that any of the defendants were actually aware of any potential risk of harm posed by their alleged behavior while Baltas was in the mental health cell. Accordingly, the court concludes that Baltas has not clearly shown a likelihood of success on the merits of his living conditions claims against the named defendants.

## VI.

With regard to his claims that defendants were involved in planning and/or soliciting other inmates to attack him in January 2020, Baltas alleges that on December 27, 2019, while he was housed in a segregation cell, Sgt. Meade threatened that if Baltas filed grievances or lawsuits, Sgt. Meade would "get [Baltas] out of the away." When Baltas asked what that meant, Sgt. Meade allegedly responded that it meant "dead." Baltas claims that on January 8, 2020, Sgt. Meade gave an inmate a weapon, solicited the other inmate to attack Baltas, and the inmate did attack Baltas, causing severe wounds. He also alleges that while he was at the hospital receiving treatment after the attack, Capt. Franklin visited him at the hospital and admitted that he had been involved in setting up the attack on Baltas.

Even if Sgt. Meade and Capt. Franklin violated Baltas's rights in being involved in planning and/or soliciting other inmates to attack him, there is no evidence that Baltas is at risk of another attack. The inmates who attacked Baltas in January 2020 are not housed in his pod and are not permitted to interact with him. Since the attack, Baltas has been housed in a single cell in the RHU where inmates have no physical contact with other inmates. There is no evidence that anyone at Red Onion has attempted to physically harm Baltas since January 2020. Moreover, despite Sgt. Meade's alleged threat that Baltas should not file grievances or lawsuits, Baltas has continued to do so, without further attacks. Accordingly, the court cannot find that Baltas has clearly shown that he is likely to suffer actual and imminent irreparable harm in the absence of preliminary injunctive relief as to these claims.

## VII.

With regard to his claims that defendants Director Clarke, AW Fuller, and UM Miller failed to protect him from the January 2020 attack by other inmates, Baltas alleges that on December 30, 2019, three days after Sgt. Meade threatened him, Baltas reported Sgt. Meade's threat to UM Miller and AW Fuller. On January 3, 2020, Baltas was moved to a general population cell. On January 6, 2020, Baltas wrote a letter and sent a copy of it to Director Clarke reporting, among other things, Sgt. Meade's threat. On January 13, 2020, while Baltas was still housed in the general population cell, a fight occurred between two other inmates and involved a weapon. Baltas claims that, after the incident, UM Miller "prohibited" staff from conducting a search for more weapons and AW Fuller "failed to order a search," which Baltas believes "allow[ed] weapons in the unit to go unfound." On January 18, 2020, while housed in the general population cell, Baltas was attacked by three other inmates, one of whom had a weapon that Baltas alleges was supplied by Sgt. Meade. Baltas argues that Director Clarke, AW Fuller, and UM Miller were "on notice" that weapons remained in the housing unit and did not conduct a search "to secure inmate safety."

Similar to the last claims, there is no evidence to suggest that Baltas is currently at risk of being attacked by inmates again or that the defendants have reason to believe so. Accordingly, the court cannot find that Baltas has clearly shown that he is likely to suffer actual and imminent irreparable harm in the absence of preliminary injunctive relief.[6]

---

[6] Moreover, Baltas has not clearly shown that he is likely to succeed on the merits of these claims. "[P]rison officials have a duty. . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (quotation marks and citation omitted). To succeed on a failure-to-protect claim, an inmate must satisfy two requirements, an objective component and a subjective component. "First, the deprivation alleged must be, objectively, sufficiently serious" (objective component), and second, "the prison official must have a sufficiently culpable state of mind" (subjective component). *Id.* at 834 (quotation marks and citation omitted).

## VIII.

With regard to his claims that AW Fuller failed to loosen his restraints and interfered with his medical treatment, Baltas alleges that AW Fuller refused to loosen the restraints while Baltas was at the hospital after Baltas complained to him about pain and difficulty breathing in them. Baltas also alleges that AW Fuller "actively interfered with [Baltas's] ability to be treated at the hospital." He claims that AW Fuller came to the hospital while Baltas was being assessed and treated. He alleges that when the doctor requested that Baltas's restraints be removed because they interfered with the doctor's ability to assess and treat him, AW Fuller refused. Baltas claims that AW Fuller stated that, pursuant to VDOC policy, the restraints would remain on at all times unless Baltas was undergoing surgery. The doctor said that the restraints might cause him to miss something which would create a need for surgery later and AW Fuller allegedly "simply shrugged his shoulders." Baltas stayed overnight at the hospital, received treatment, and was discharged the next day.

---

To establish the subjective component, a prisoner must show that the prison official acted with "deliberate indifference," which entails "something more than mere negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 834-35. Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). The test is not "whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregard[ed] that risk." *Id.*

     Baltas claims that the defendants should have known about his risk of being attacked because he informed them about Sgt. Meade's threat to "get him out of the way" if he filed grievances or lawsuits. However, Baltas does not allege that these defendants actually drew an inference between Sgt. Meade's alleged threat and the existence of a "substantial risk of serious harm." Baltas also claims that after a fight between two other inmates involving a weapon occurred in his housing unit, UM Miller "prohibited" a search of the housing unit for more weapons and AW Fuller "failed to order" a search. However, there is no allegation that either of these defendants made these decisions while knowing that additional weapons existed in the housing unit or that Baltas was at a substantial risk of serious harm if they did. Accordingly, the court cannot find that Baltas has clearly shown a likelihood of success on the merits of his failure-to-protect claims.

AW Fuller's failure to loosen the restraints and/or remove them so that Baltas could be examined by the doctor happened in January 2020. Even if AW Fuller violated his rights on that day, there is no evidence to suggest that it will happen again. Accordingly, the court cannot find that Baltas has clearly shown that he is likely to suffer actual and imminent irreparable harm in the absence of preliminary injunctive relief as to these claims.[7]

## IX.

For the reasons discussed, the court concludes that Baltas has not clearly shown "actual and imminent" irreparable harm in the absence of the preliminary injunction and/or that he is likely to succeed on the merits of his claims. Accordingly, Baltas's motion seeking preliminary injunctive relief and his motions seeking an expedited hearing and/or ruling will be denied.

The Clerk shall send a copy of this Memorandum Opinion and Order to the parties.

**ENTERED** this 22nd day of March, 2021.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[7] Moreover, Baltas has not clearly shown that he is likely to succeed on the merits of the medical treatment claim. To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that a defendant was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Claims of inadequate medical care under the Eighth Amendment against a non-medical prison official require facts showing that the defendant was personally involved a denial of treatment, or tacitly authorized or was indifferent to the medical provider's misconduct. *Militier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *Smith v. Barry*, 985 F.2d 180, 184 (4th Cir. 1993); *Lewis v. Angelone*, 926 F.Supp. 69, 73 (W.D. Va. 1996). Baltas does not allege that the doctor ultimately was unable to assess or treat him or that any diagnosis or treatment was "missed" because the restraints were left on. Accordingly, the court cannot find that Baltas has clearly shown a likelihood of success on the merits of his medical treatment claim against AW Fuller.